UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James Nichols,
   Plaintiff,

v.                                    No. 1:06-CV-90

MVM, Inc. and
Industrial Technical Professional
Employees Union-ITPEU,
   Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 52 & 53)

James Nichols brings suit against his former employer, MVM, Inc. ("MVM") and his former union, Industrial Technical Professional Employees Union ("ITPE") for breach of contract and breach of the duty of fair representation. Nichols alleges that MVM terminated him in violation of the collective bargaining agreement("CBA") between ITPE and MVM. Nichols also alleges that ITPE failed to fairly represent him when he was terminated. MVM and ITPE have moved for summary judgment.

I. Background

For the purposes of the pending motions the following facts are undisputed.

Nichols worked for MVM as a security guard assigned to the Tabor Federal Building in St. Albans, VT. MVM had a contract with Federal Protective Services of the U.S. Department of Homeland Security ("FPS"), to provide security services to the building. ITPE represented security guards at the building, including Nichols, and had entered into a CBA with MVM.

1. Building Access Incident

On August 23, 2005, Nichols was on duty, guarding one of the building's entry points. Several FBI agents arrived at the entry point to meet with an Immigration and Naturalization Service ("INS") employee Jennifer Mickey. Nichols did not immediately give access to the agents because they were not on the daily visitor list. Nichols contacted Mickey to inform her of the visitors, and she came down to the entry point. Mickey asked Nichols why the agents were being held up. Nichols told her that there was some confusion about whether the agents should be given "escorted" or "non-escorted" badges and that he had to contact his supervisor before they could be granted access.

Nichols told the agents to wait until he received instructions from his supervisor. After waiting a few

minutes for a response, Mickey asked Nichols to give the agents "escorted" badges and that she would escort them. Nichols apologized for the delay and gave the agents the badges.

Nichols alleges that the confusion surrounding the incident was due to constantly changing orders from his supervisors, including contradictory written and verbal orders. Further, Nichols submits that checking with his supervisor was the proper course of action.

2. Response

Two days after the incident, Mickey sent an e-mail to the INS security manager Gregory Hodgdon, explaining the incident and expressing concern over the confusion that occurred. Hodgdon forwarded the e-mail to FPS Inspector Larry Bennett, who in turn investigated the incident. Bennett produced an inspection report concluding that Nichols had no excuse for not following proper access control policy. On September 6, Bennett sent his report to the Contracting Officer's Representative ("COR"), Theresa Gaffney, a federal employee who acts as a liaison between FPS and MVM. Upon reviewing the report, Gaffney phoned Gregory Wholean, MVM Project Manager for the building

security contract, and expressed her view that Nichols should be removed from the security contract. Gaffney followed up by sending Wholean an e-mail that read:

> "My recommendation is to removed [sic] James Nichols from MVM contract. Access control is very important and C/O Nichols did not follow the FPS access control policy from the post orders."

3. Termination

MVM's contract with the federal government provided in part: "If the ... COR ask[s] for the removal of a contract employee regardless of the offense, the contractor must remove the individual immediately." Wholean treated Gaffney's phone call and e-mail as a request and therefore felt obligated to follow the contract and remove Nichols.

MVM did not have any other contracts in Vermont where Nichols could be transferred. Therefore, if Nichols was removed from the contract, he would be terminated. MVM considered Nichols to be a good employee and was ready to keep him if Gaffney would reconsider her position. MVM's Site Supervisor asked Gaffney to reconsider her position on Nichols' removal and if she would approve of posting Nichols elsewhere in the building. Gaffney would not reconsider her position and MVM terminated Nichols.

4. Grievance

The CBA provides that employees may not be terminated without just cause. One of the actions that establishes just cause for immediate dismissal is:

> Termination, suspension, or withdrawal of the employee's credentials by the Government, or the employee is otherwise asked to be removed from working under the Employer's contract with the Government.

In addition, the CBA contains a section entitled "Government and Client Supremacy" which provides in part:

> The Union acknowledges that the Employer has entered into the Prime Contract with the Client to provide services under specific terms and conditions, and that the Client has broad discretion to direct the activities of the Employer within the scope of the Prime Contract. Accordingly, the administration of the terms of this Agreement is expressly subject to the requirements of the Client and the Government imposed upon the Employer by or through the Prime Contract. The Client may supersede any understanding of the parties hereto regarding assignments, hours, shifts, credentials, qualifications, etc., as the Client deems to be in the interest of the Client's overall security objective, and there shall be no recourse against the Employer regarding such actions. Any determination by the Client to supercede the above understanding of the parties may be in either oral or written form, and the Union expressly acknowledges the Employer's obligation to comply with such a directive, and the fact that the Union is not Permitted to grieve or arbitrate the Employer's decision to do so or the impact of such decision. In the event of such Determination, an employee believes he/she is being discriminated against, such determination shall be investigated, by both employer and Union representative.

5

On October 1, 2005, Nichols submitted a grievance to ITPE contesting his discharge. ITPE's representative, E. Charles Hampton, did not learn of the grievance until November 17, when Nichols contacted him directly. Hampton then began an investigation by contacting MVM to obtain information on the termination. On November 21, Hampton received Inspector Bennett's report and a copy of Gaffney's e-mail. Hampton was also told how MVM had asked Gaffney to change her position and that MVM would reinstate Nichols if FPS changed its position. Hampton attempted to contact FPS about the termination but FPS was unwilling to discuss such matters. Hampton then told Nichols that he was terminated because the government requested his removal. ITPE felt that the CBA precluded pursuing the grievance further and going to arbitration.

Nichols alleges that ITPE was careless in handling his case. He claims that he requested to speak with ITPE the day he was terminated but did not hear back from it for seven days. He also claims that he was unable to obtain a grievance form until he got one from his father-in-law, and that he was told that he could not speak with an ITPE

6

representative. Nichols believes his difficulties and delays were due to his prior confrontations with Shop Steward Mike Lucier or because he had filed previous grievances.

On May 5, 2006, Nichols filed this Complaint against MVM for breaching the CBA and ITPE for breaching its duty of fair representation.

II. Discussion

Both MVM and ITPE have moved for summary judgment. The Court will grant summary judgment if no genuine issue of material fact exists, and, based on undisputed facts, the moving party is entitled to judgment as a matter of law. Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006)(citing D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)). In deciding whether there is a genuine issue of material fact the Court must resolve all ambiguities and draw all inferences in the light most favorable to the nonmoving party. Id. (citing Ford v. McGinnis, 352 F.3d 582, 587 (2d Cir. 2003)). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A. Breach of Contract

Nichols claims that MVM breached the CBA by terminating him without just cause. MVM argues that it had just cause under the CBA because FPS asked that Nichols be removed from the contract. Nichols counters that the government never "asked" for his removal, and instead only "recommended" that he be removed.

Nichols relies on Gaffney's e-mail, which was worded as a "recommendation". However, even with the language of the e-mail, it is clear that Gaffney "asked" for Nichols removal. Gaffney began by speaking to Wholean about removing Nichols and followed up by e-mail. If Gaffney was making a suggestion and not a request, it would seem unnecessary to send a follow up e-mail formalizing the suggestion. More importantly, Gaffney was approached by MVM after her e-mail was received in an effort to keep Nichols with MVM. When MVM agreed to retain Nichols if Gaffney changed her position, the decision was wholly in FPS's hands. If Gaffney had only made a recommendation, she would have clarified that it was not a request or demand when approached about saving Nichols' job. It is unreasonable to believe that Gaffney thought MVM was treating her

correspondences as a recommendation. Because it is unreasonable to find that Gaffney only "recommended" Nichols' removal, no genuine issue of material fact exists.

B. The Duty of Fair Representation

To prevail on a duty of fair representation claim, the plaintiff must prove both that the employer breached the CBA and the union breached its duty of fair representation. Sanozky v. Int'l Ass'n of Machinists and Aerospace Workers, 415 F.3d 279, 282 (2d Cir. 2005) (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983)). "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998) (internal citation omitted). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." Airline Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (citation and quotation marks omitted).

As I have already found that MVM did not breach the CBA, Nichols cannot prevail on his duty of fair representation

claim.

Further, the undisputed facts show that ITPE's conduct was not arbitrary, discriminatory, or in bad faith. While Nichols had difficulty filing his grievance and was delayed by ITPE, this does not rise to the level of behavior so far outside a wide range of reasonableness as to be irrational. ITPE's decision not to continue with Nichols' grievance was reasonable because ITPE was told that Nichols was removed by government request and the CBA is clearly superseded by a government request. Therefore, Nichols cannot prevail against ITPE.

C. Other Claims

Nichols argues that both MVM and ITPE had a duty to clear up the facts of the incident with the federal government. Nichols submits that if FPS had understood that the incident had been caused by conflicting and constantly changing orders, it would not have wanted him removed. However, no such duty can be found in the CBA and there is no foundation for such a duty being implied. ITPE's duty of fair representation did not extend beyond the standard discussed above. Therefore, neither MVM or ITPE had a duty to ensure the government based its decision on proper facts.

Nichols also argues that FPS was required to have just cause to request his removal. No such requirement is found in MVM's contract with the government and neither Nichols nor ITPE had any contractual relationship with the government. MVM's contract with the federal government explicitly states that the COR can request the removal of an MVM employee "regardless of the offense."

Nichols argues that MVM used him as a scapegoat. He claims that he acted properly and MVM misrepresented the facts of the incident to FPS to shift blame away from MVM. Even if this is accepted as true, it does not change the analysis of his claim. Nothing in the CBA limits MVM's interaction with the government; therefore, even if Nichols was used as a scapegoat, MVM did not breach the CBA.

III. Conclusion

For the reasons stated above I recommend that the Court GRANT the motions for summary judgment.

Dated at Burlington, in the District of Vermont, this 15th day of August, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See</u> Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).